STATE of Wisconsin, Plaintiff-Respondent,

v.

Agustin VELEZ, Defendant-Appellant-Petitioner.

Supreme Court

*No. 96–2430–CR. Oral argument November 12, 1998.—Decided February 12, 1999.*

(Also reported in 589 N.W.2d 9.)

For the defendant-appellant-petitioner there were briefs by *Scott B. Taylor* and *Lucas, Wilkoski & Taylor*, West Allis and oral argument by *Scott B. Taylor*.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. DONALD W. STEINMETZ, J. The issue in this case is whether the circuit court erred when it did not conduct a due process evidentiary hearing following the defendant's allegation that the State deliberately delayed charging him with the crime of first degree murder to avoid juvenile court jurisdiction. We hold that the circuit court did not err.

¶ 2. The defendant-appellant-petitioner appeals a decision of the court of appeals upholding the decision of the circuit court for Milwaukee County, the Honorable David A. Hansher, that an evidentiary hearing was unwarranted under the facts of this case.

¶ 3. Of the several issues the defendant raised in the court of appeals, only his claim that the circuit court erred in failing to conduct an evidentiary hearing is renewed here.

I

¶ 4. The relevant facts are as follows. On August 23, 1994, the defendant, Agustin Velez, was charged as an adult with first-degree intentional homicide for a crime committed on June 14, 1994, a date on which the defendant was a juvenile.

¶ 5. Early in their investigation, police identified the juvenile Velez as a suspect in the murder of James Lovett. The record reveals that shortly after the mur-

der was committed, the police spoke with eye witnesses who placed Velez at the crime scene on the night of the murder and also identified Velez as the murderer.

¶ 6. On June 22, 1994, with the support of an affidavit describing the circumstances surrounding the June 14, 1994 murder, the Milwaukee County Assistant District Attorney requested of the Judicial Court Commissioner of the Children's Division of the Milwaukee County Circuit Court a warrant for the arrest of the juvenile Velez. The affiant, a law enforcement officer employed by the City and County of Milwaukee, State of Wisconsin Police Department,[1] and liaison between the department and the children's court, attested to familiarity with police reports stemming from the June 14 murder, which placed Velez at the murder scene the night of the crime and identified Velez as a suspect. The affiant further attested that those same police reports described the unsuccessful attempts made by the City of Milwaukee police officers to locate Velez at his mother's home and the homes of his acquaintances. Finding probable cause, the Judicial Court Commissioner issued the requested warrant for the arrest of the juvenile Velez on June 22, 1994.

¶ 7. The police did not locate the defendant while he was a juvenile. When the defendant became an adult on August 2, 1994, the juvenile court warrant was withdrawn, and a criminal warrant was issued in its place. Then, following an anonymous tip on an unrelated matter, the defendant was apprehended on August 19, 1994. The criminal complaint issued August 23, 1994, not quite three weeks after the defen-

---

[1] The affiant himself stated in his affidavit that he was so employed.

dant became an adult under the law in effect at the time.[2]

¶ 8. On September 2, 1994, the defendant moved to dismiss the complaint against him for lack of jurisdiction. He renewed the motion on October 19, 1994, supporting it with a memorandum and affidavit. He requested the court hold an evidentiary hearing on whether the State intentionally "manipulated the system" in order to avoid juvenile court jurisdiction when it did not file a criminal complaint against Velez until more than two months after he had been identified as a suspect, and nearly three weeks after he became an adult.

¶ 9. With his memorandum, the defendant identified two areas of inquiry for an evidentiary hearing: first, he contended that the State should have filed a delinquency petition in Children's Court, not, as it did, a request for a warrant for the arrest of a juvenile. Second, the defendant believed that the arrest warrant, obtained on June 22, 1994, was "apparently" not entered into the Crime Information Bureau (CIB) and/or the National Crime Information Center (NCIC) computer systems, which, he further alleged, would have alerted law enforcement agencies nationwide that the defendant was being sought by the Milwaukee Police Department.

---

[2] The age at which a court of criminal jurisdiction has original jurisdiction of a defendant accused of committing a crime has since been lowered from 18 to 17. *See* Wis. Stat. §§ 938.02(1) and (10m), and 938.12 (1995–96). The age at which a court of criminal jurisdiction has original jurisdiction of a defendant accused of committing an intentional homicide has since been lowered to ten. *See* Wis. Stat. § 938.183(1)(am) and (2)(a) (1995–96).

¶ 10. Without holding the requested evidentiary hearing, the circuit court denied the defendant's motion to dismiss. At a nonevidentiary hearing on the motion, held October 31, 1994, the circuit court determined that before a defendant was entitled to an evidentiary hearing on the question, the defendant needed to make some threshold showing of manipulative intent. The court found that the defendant had failed to make that sufficient initial showing following its examination of the defendant's motion, the defendant's counsel's affidavit and memorandum of law, as well as the prosecutor's offer of proof on the issue.

¶ 11. In reaching its decision, the circuit court placed a fair degree of significance upon the prosecutor's offer of proof, which included the following: first, after identifying Velez as a suspect, the police were initially unable to locate him; second, because the defendant could not be located, the prosecutor requested of the Children's Court a warrant for his arrest—under circumstances where a suspect cannot be located, a warrant as issued here, not a delinquency petition, is the appropriate course of action; third, following the issuance of the warrant, police continued to search for the defendant but were unsuccessful; finally, police in other cities did make attempts to locate Velez—for instance, following anonymous tips that Velez was located outside Milwaukee, the police contacted the Gang Crimes Units in at least two other cities, which in turn made their own attempts to find him.

¶ 12. After accepting the prosecutor's offer of proof, the circuit court asked the defendant to make his own offer of proof. The defendant's counsel repeated the allegations contained in the motion but was not prepared to offer additional facts in support of his posi-

tion, nor any evidence tending to contradict the State's offer. The circuit court stated that without more, the allegations offered by the defense were insufficient to support the holding of an evidentiary hearing. The court twice offered the defendant an opportunity for his requested evidentiary hearing at a later date if he could "come up any time prior to trial and submit affidavits showing manipulative intent by the District Attorney's Office or police department." The court entered an order denying the defendant's motion to dismiss on November 4, 1994.

¶ 13. Following the hearing and prior to the defendant's trial, the circuit court issued an order to the Milwaukee Police Department to provide the defendant's counsel with any documentation that would verify the entering of the warrant issued by the Children's Court into the CIB or NCIC systems. On December 12, 1994, the Milwaukee Police Department responded to the court order with a departmental memorandum and attachments from the NCIC and the CIB verifying that the warrant was entered into both computer systems on June 22, 1994, the same date the warrant issued.

¶ 14. Despite the circuit court's invitation, the defendant did not bring forward any additional evidence that the State or the police department intentionally manipulated the system in order to charge him as an adult. An evidentiary hearing was never held.

¶ 15. At his subsequent jury trial in January 1995, the defendant was convicted of one count of First Degree Intentional Homicide, contrary to Wis. Stat. § 940.01(1). He was sentenced to a term of life imprisonment in the Wisconsin prison system.

¶ 16. The defendant appealed. With respect to the circuit court's denial of his request for an evidentiary hearing, the court of appeals, in an unpublished opinion, concluded that because the State had refuted the defendant's claim of a manipulative intent at the nonevidentiary hearing, an evidentiary hearing was not required.

## II

¶ 17. "[W]hen the charging authorities have reason to believe that a child has committed an offense which, if committed by an adult, constitutes a crime, jurisdiction in a criminal court cannot be maintained on a charge brought after the child becomes eighteen, unless it is affirmatively shown that the delay was not for the purpose of manipulating the system to avoid juvenile court jurisdiction." *State v. Becker*, 74 Wis. 2d 675, 678, 247 N.W.2d 495 (1976); *see also State v. Avery*, 80 Wis. 2d 305, 310, 259 N.W.2d 63 (1977), *overruled in part on other grounds by State v. Montgomery*, 148 Wis. 2d 593, 436 N.W.2d 303 (1989); *Montgomery*, 148 Wis. 2d 593. The State bears the burden of proving that it did not intentionally delay charging the defendant in order to avoid juvenile jurisdiction. *Montgomery*, 148 Wis. 2d at 604; *see also Becker*, 74 Wis. 2d at 678.

¶ 18. The issue presented for our review requires us to determine whether a defendant is entitled to an evidentiary hearing as a matter of right whenever he or she makes the mere allegation that the State intentionally "manipulated the system" to avoid juvenile court jurisdiction.

¶ 19. The defendant's argument is essentially two-fold. First, relying upon our decisions in *Becker, Avery*, and *Montgomery*, the defendant argues that a

motion to dismiss that no more than alleges that the State intentionally manipulated the system in order to avoid juvenile court jurisdiction automatically triggers his right to an evidentiary hearing on the issue. Therefore, because he did make that allegation in his motion, he was entitled to his hearing. Second, if, in addition to the allegation, he is required to allege facts which, if true, would entitle him to the relief he sought, he argues that he did allege such facts. In either event, he argues that he should have received the requested evidentiary hearing.

¶ 20. The State finds less significance in the holdings of *Becker, Avery*, and *Montgomery* than does the defendant. For its part, the State believes that these cases set forth the procedure by which a defendant may request relief—through a motion to dismiss as the defendant made here—not that the cases require an evidentiary hearing as a matter of right. In the State's view, a motion devoid of the factual basis upon which relief could be granted should not entitle the defendant to an evidentiary hearing. It argues that at a minimum, the defendant must be required to present some factual basis for holding the evidentiary hearing.

¶ 21. The State proposes that a defendant should be required to move to dismiss the criminal charges and that the motion to dismiss itself be subject to established procedure required of motion practice generally. That procedure would first require that the defendant's motion state with particularity the grounds upon which the motion is based. *See State v. Caban*, 210 Wis. 2d 597, 606, 563 N.W.2d 501 (1997); *see also* Wis. Stat. § 971.30(2)(c) (1995–96). Second, the procedure would require that the motion to dismiss raise a question of fact sufficient to warrant an evidentiary hearing. *See State v. Garner*, 207 Wis. 2d 520, 531–32, 558 N.W.2d

916 (Ct. App. 1996) (citing *Nelson v. State*, 54 Wis. 2d 489, 497–98, 195 N.W.2d 629 (1972)). To adequately meet the second step, the defendant would need to meet the standards adopted by this court in *Nelson* for postconviction motions to vacate pleas of guilty, which the State proposes should be applied here as the standard for pretrial motions to dismiss for lack of jurisdiction.

¶ 22. We agree with the State that an evidentiary hearing on the issue presented is not a right as a matter of course, and that the *Nelson* standards, with additional due process safeguards, may be appropriately adopted for use in the instant case.

¶ 23. In *Nelson*, we held that before a defendant was entitled to an evidentiary hearing on his postconviction motion to withdraw a plea of guilty, he first needed to make a showing that the relief sought was warranted. *Nelson*, 54 Wis. 2d at 497. We further set forth the standard by which a circuit court would determine the necessity of that hearing:

> if a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing. However, if the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusionary allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing.

*Id.* at 497–98.

¶ 24. The defendant distinguishes the facts of *Nelson* from those here on the basis that *Nelson* concerned a defendant's postconviction motion, not a

pretrial motion. However, the defendant points to no significance in the distinction he draws.

¶ 25. Some of the very reasons we require that the defendant make a prima facie showing for an evidentiary hearing following a postconviction motion are relevant with respect to a pretrial motion. First, by showing that the relief sought may be warranted, we conserve scarce judicial resources by eliminating unnecessary evidentiary hearings when there may be no disputed facts requiring resolution, or when the facts would not warrant the relief sought even if proved. *See Garner*, 207 Wis. 2d at 527–528. Second, where an evidentiary hearing is necessary, a full statement of the facts in dispute allows both parties to prepare and to litigate the real issues more efficiently and the evidentiary hearing will serve as more than a discovery device. *See id.* at 528.

¶ 26. To be sure, we noted in *Nelson* that the standard therein adopted was an exception to the traditional rule that hearings are to be liberally granted if a motion is made prior to judgment or sentence. *Nelson*, 54 Wis. 2d at 496 (citation omitted). However, despite the traditional rule, an evidentiary hearing need not be granted as a matter of course when requested prior to trial. We agree with the Seventh Circuit that a "court does not have to hold an evidentiary hearing on a motion just because a party asks for one. An evidentiary hearing is necessary only if the party requesting the hearing raises a significant, disputed factual issue." *United States v. Sophie*, 900 F.2d 1064, 1070 (7th Cir. 1990).

¶ 27. On at least one occasion in Wisconsin, the *Nelson* standards have been applied to a defendant's pretrial motion. In *Garner*, the Wisconsin Court of Appeals considered a pretrial motion challenging the

admissibility of identification evidence and found that the application of the *Nelson* standards provided a "solid foundation on which to build the analysis [of whether an evidentiary hearing was warranted]" *Garner*, 207 Wis. 2d at 532.

¶ 28. We find that the *Nelson* standards may also be applied in the context of a pretrial motion to dismiss for lack of jurisdiction based upon "manipulative intent" to avoid juvenile court jurisdiction. However, the *Nelson* standards are not, by themselves, sufficient to protect a defendant's due process rights when he is bringing a motion prior to trial. We must be mindful of the inherent difficulties a defendant may have in developing the facts necessary to support a pretrial motion, a situation to which the court of appeals in *Garner* was sensitive: unlike the plentiful record often available to a defendant making a postconviction motion, at a pretrial motion, a defendant is often not in a position to have the necessary and proper facts before him on the ultimate question. *Garner*, 207 Wis. 2d at 532–33. With an eye to this problem, the *Garner* court found that application of *only* the *Nelson* standards to a pretrial motion to suppress identification would be insufficient. *Id.* at 533. As remedy, the *Garner* court described the addition of a safeguard:

> [A]lthough a defendant may be unable to allege sufficient specific facts to warrant relief, a trial court must provide the defendant the opportunity to develop the factual record where the motion, alleged facts, inferences fairly drawn from the alleged facts, offers of proof, and defense counsel's legal theory satisfy the court of a reasonable possibility that an evidentiary hearing will establish the factual basis on which the defendant's motion may prevail.

*Id.* at 533.

¶ 29. We hold that the *Nelson* standards for granting an evidentiary hearing, coupled with the safeguards provided by *Garner*, are applicable to a circuit court's consideration of a pretrial motion to dismiss where the defendant alleges the State's manipulative intent to avoid juvenile court jurisdiction. A circuit court's consideration of both standards will sufficiently protect a defendant's right to due process.

¶ 30. These due process rights in issue are not insignificant. The deliberate delay in instituting proceedings until a juvenile offender becomes an adult within the jurisdiction of the criminal court unfairly deprives a juvenile offender of the opportunity he or she otherwise would have had to a waiver hearing on whether the criminal court should exercise its jurisdiction. *See Avery*, 80 Wis. 2d at 310–11. The significance of the due process right in issue was first identified in *Miller v. Quatsoe*, 348 F. Supp. 764 (E.D. Wis. 1972). In *Miller*, the defendant, while in custody in the county jail and within three weeks of his eighteenth birthday, stabbed a guard with a ballpoint pen. The authorities deferred the prosecution until he turned 18, and then charged him in circuit court, thereby avoiding the juvenile waiver proceeding.

¶ 31. The court in *Miller* noted that when "a state operates a dual criminal justice system with one set of procedures and penalties for juveniles and another for adults" constitutional safeguards attach to a determination that a juvenile offender should be treated as an adult. *Id.* at 765. Therefore, when the filing of a criminal complaint determines juvenile court jurisdiction, the filing could not be delayed in order to avoid juvenile court jurisdiction unless "the juvenile is granted a

14

hearing with the necessary constitutional safeguards."
*Id.* at 766.

¶ 32. We adopted the reasoning of *Miller* in *Becker*, where we wrote that "where the filing [of a criminal complaint] is 'delayed *in order to avoid juvenile court jurisdiction,*' the circuit court can maintain jurisdiction only after a due-process hearing." *Becker*, 74 Wis. 2d at 677 (emphasis in the original). The hearing is conducted to determine "whether the delay in charging was in fact occasioned by a deliberate effort to avoid juvenile court jurisdiction." *Id.* We then suggested that "when criminal courts face this problem in the future and are confronted with the question of whether the prosecution delayed charging to avoid juvenile-court jurisdiction, the adult court, upon motion to dismiss for want of jurisdiction, proceed to resolve the *Miller* issues." *Id.* at 680.

¶ 33. Here, the circuit court did hold a hearing on the defendant's motion to dismiss. And although not an evidentiary hearing, the hearing was sufficient to protect the defendant's right to due process as required by *Becker*. The circuit court properly considered whether the defendant placed into issue any question of fact that could have led to relief, and found that he had not. We acknowledge that *Montgomery* clearly stated that the State has the burden of showing that any delay was not intentional. *Montgomery*, 148 Wis. 2d at 604. However, we find that requiring the defendant to bring forward some facts which, if true, would entitle the defendant to relief is not in conflict with the State's burden to prove that it did not have a manipulative intent.

¶ 34. The general notion of "burden of proof" has two aspects: the burden of producing some probative

evidence on a particular issue, and the burden of persuading the fact finder with respect to that issue. *Mullaney v. Wilbur*, 421 U.S. 684, 695 n.20 (1975); Wayne R. LaFave and Austin W. Scott, Jr., Criminal Law 44–45 (1972). The principles of due process are not violated if the burden of production, as opposed to the burden of persuasion, is placed upon a defendant. For instance, a defendant is required to produce some evidence in support of his or her affirmative defenses even though the State bears the ultimate burden of proof on that issue. *State v. Schulz*, 102 Wis. 2d 423, 430, 307 N.W.2d 151 (1981); *see also State v. Pettit*, 171 Wis. 2d 627, 640, 492 N.W.2d 633 (Ct. App. 1992) ("a defendant's due process rights are not violated when a *burden of production*, as opposed to a *burden of persuasion*, is placed upon a defendant to start matters off by putting in some evidence of the negative defense." (citations omitted)(emphasis in the original)). In a matter more analogous to that here, where a defendant claims governmental misconduct, he or she may first be required to meet a burden of production. *See United States v. Carter*, 966 F. Supp. 336, 343 (E.D. Pa. 1997).

¶ 35. Finally, we do not agree with the defendant's view that he is entitled to an evidentiary hearing because his motion properly identified the basis upon which relief could be granted. To accept his view would be to create a rebuttable presumption of the State's manipulative intent whenever an adult is arrested for a crime committed when the adult was still a juvenile. Our prior cases do not go so far as to create this presumption. We deem it appropriate to require that the defendant make a prima facie showing of manipulative intent before gaining as a matter of right his or her request for an evidentiary hearing. We recognize that

the State bears the ultimate burden of proof on the issue.

¶ 36. We hold that a nonevidentiary hearing on a defendant's motion to dismiss used to determine whether an evidentiary hearing is required satisfies the due process hearing required of *Becker*. At the nonevidentiary hearing on the motion, the circuit court must determine whether an evidentiary hearing is required under the *Nelson* standards. *Nelson* demands the application of a two-part test. *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996). "If the [defendant's] motion on its face alleges facts which would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing." *Id.* (citing *Nelson*, 54 Wis. 2d at 497). However, if the motion does not allege sufficient facts, the circuit court has the discretion to deny the motion without holding an evidentiary hearing if it finds one of the following circumstances: 1) the defendant failed to allege sufficient facts in his or her motion to raise a question of fact; 2) the defendant presented only conclusory allegations; or 3) the record conclusively demonstrates that the defendant is not entitled to relief. *Id.* at 310, 311.

¶ 37. Further, because we consider here a pretrial motion, we modify the second part of the *Nelson* test to accommodate the inherent difficulties presented a defendant when making a pretrial motion as the defendant does here. Where the circuit court must use its discretion in determining whether to grant an evidentiary hearing, it must:

> carefully consider the record, the motion, counsels' arguments and/or offers of proof, and the law.

> Where the record establishes no factual scenario or legal theory on which the defendant may prevail, and/or where the defendant holds only hope but articulates no factually-based good faith belief that any impropriety will be exposed through an evidentiary hearing, the evidentiary hearing is not required.

*Garner*, 207 Wis. 2d at 534–35. Where there is a reasonable possibility that the defendant will establish the factual basis at an evidentiary hearing, the circuit court must "provide the defendant the opportunity to develop the factual record." *Id.* at 533.

## III

■

¶ 38. Applying *Nelson*, we must first determine whether the defendant's motion alleged sufficient facts which would entitle him to the dismissal of the charges against him due to the State's manipulative intent. *See Bentley*, 201 Wis. 2d at 311. Such an allegation is required in order for a defendant to meet his or her initial burden of production on the issue. If a defendant's motion does allege sufficient facts, an evidentiary hearing is required. *Id.* Whether a defendant alleged facts sufficient to require an evidentiary hearing is a question of law which we review de novo. *Id.* However, if a defendant's motion does not allege sufficient facts, the circuit court has the discretion to deny the motion without an evidentiary hearing for any of the three reasons enumerated in *Nelson*. *Id.* at 310–11. Further, because a pretrial motion is in issue, in exercising its discretion under the second part of the *Nelson* test, the circuit court must take into consideration the record, motion, counsel's arguments and offers of proof, and the law. *Garner*, 207 Wis. 2d at 534–35.

We use the deferential erroneous exercise of discretion standard in reviewing a circuit court's discretionary decision. *Bentley*, 201 Wis. 2d at 311.

¶ 39. Velez's allegation was two-fold. First, he alleged that a juvenile delinquency petition, not a warrant for the arrest of a juvenile, should have been issued from the Children's Court. His second allegation was that the warrant for his arrest, once issued, might not have been entered into the NCIC or CIB computer systems. We find that with these two allegations, the defendant failed to meet his burden of production in alleging sufficient facts entitling him to an evidentiary hearing under the first prong of the *Nelson* test.

¶ 40. The defendant's allegation that the State could not request a warrant for an arrest in place of a juvenile delinquency petition is unsupported by facts. The defendant noted in his memorandum on the motion that the State did not pursue him with a *capias* issued by a judge as authorized by Wis. Stat. § 48.19(1)(b). The defendant questioned the State's request for a warrant, but did not bring forward any evidence that such a request was improper—he further suggested that the practice here was unusual, but provided no facts that this was true. At most, the defendant's memorandum maintains that had the State requested a delinquency petition instead of a warrant for arrest, the State would have provided notice to the defendant or the defendant's parent that could have, in turn, provided the defendant an opportunity to have a chance of remaining in the juvenile system. At best, the allegation points to the State's negligence, which would still not entitle the defendant to the relief sought since the State's negligent delay in bringing criminal charges does not constitute a due process violation. *Montgomery*, 148 Wis. 2d at 602–03.

19

¶ 41. We also find the defendant's second allegation to be speculation, insufficient to entitle him to an evidentiary hearing. The defendant alleged that the warrant *may* not have been entered into either of the two nationwide computer systems. This allegation is not a fact upon which relief could be granted. The defendant's counsel's affidavit details a number of requests made for conclusive evidence of when, if ever, the warrant was entered into the computer systems. Counsel received little satisfaction and nothing that would constitute proof of its entry. However, an evidentiary hearing is not a discovery device and the questions that defendant's counsel had regarding the entry of the warrant into the computer system does not present a fact sufficient to entitle the defendant to the relief sought.

¶ 42. We find that the defendant alleged no facts which would have entitled him to an evidentiary hearing. Because we find that no facts alleged would have been sufficient for the relief sought, we find that the circuit court committed no error of law. The first of the two-part *Nelson* test was not satisfied by the defendant, and therefore no evidentiary hearing was required.

¶ 43. Where the first of the two-part *Nelson* test is not satisfied, the circuit court is to use its discretion in determining whether to grant the evidentiary hearing even though sufficient facts are not alleged. *Bentley*, 201 Wis. 2d at 311. Because this motion was brought prior to trial, the circuit court's discretion must be made with consideration of the guidelines articulated in *Garner*.

¶ 44. The circuit court properly exercised its discretion under the facts and did so considering the information required of *Garner*. In concluding that the defendant was not entitled to an evidentiary hearing, the circuit court considered the defendant's motion, memorandum of law and affidavit, and both parties' offers of proof. Included in the assistant district attorney's offer of proof was the statement that the police were continuing to look for Velez following the murder but were unable to find him, and that the issuance of a warrant, as opposed to a delinquency petition, was the appropriate method of apprehending a suspect who could not be found. The defendant was unable to contribute any additional facts in support of his allegation.

¶ 45. The defendant did not dispute the State's offer to prove that the police made a good faith effort to find the defendant before his birthday; he questioned whether the juvenile warrant had been entered into the computerized crime information system. His counsel's own affidavit, in addition to his statements that he was unable to find conclusive evidence that the warrant was or was not entered, established that a Milwaukee police officer, working the warrant desk, "believed" that the warrant had been entered. The defendant simply had difficulty confirming or denying this belief. This evidence does not support an allegation of intentional manipulation of the system by the police.

¶ 46. We find of particular import the invitation the circuit court made to the defendant to come before the court at any time prior to trial with additional facts if he could—a safety measure that adequately protected this defendant who faced pretrial motion evidentiary hurdles. The defendant was allowed time to develop a factual record prior to trial and make a

request for an evidentiary hearing when he had some facts to support his allegations. Notably, the circuit court took the additional step of ordering discovery on the defendant's allegation that the arrest warrant may not have been entered into the computer system. The police department responded to that order and conclusively demonstrated that the warrant was indeed entered. Under these circumstances, we find that the defendant was not denied due process in the proceedings. The circuit court did not erroneously exercise its discretion in determining that an evidentiary hearing was unnecessary.

¶ 47. The defendant's evidence does not support his allegation of the State's intentional manipulation of the criminal justice system. We conclude that the circuit court properly exercised discretion in denying Velez's motion without an evidentiary hearing.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 48. ANN WALSH BRADLEY, J. (*concurring*). I agree with the majority that the decision of the court of appeals should be affirmed. I also agree with the test adopted by the majority. I write separately, however, because I disagree with the application of the test to the facts of this case.

¶ 49. Under *Nelson v. State*, 54 Wis. 2d 489, 496–98, 195 N.W.2d 629 (1972), a defendant must "allege[ ] facts which, if true, would entitle the defendant to relief" in order to receive an evidentiary hearing. If the defendant makes only conclusory allegations or does not allege sufficient facts to raise a question of fact, the defendant is not entitled to such a hearing. This post-conviction test places a considerable

burden on a defendant. Thus the majority correctly tempers the post-conviction *Nelson* test by adopting the rationale of *State v. Garner*, 207 Wis. 2d 520, 558 N.W.2d 916 (Ct. App. 1996):

> [A]lthough a defendant may be unable to allege sufficient specific facts to warrant relief, a trial court must provide the defendant the opportunity to develop the factual record where the motion, alleged facts, inferences fairly drawn from the alleged facts, offers of proof, and defense counsel's legal theory satisfy the court of a reasonable possibility that an evidentiary hearing will establish the factual basis on which the defendant's motion may prevail. . . .[H]owever, a defendant is not entitled to an evidentiary hearing simply to search for *something* based on *nothing* but hope or pure speculation.
>
> Thus, in determining whether to grant an evidentiary hearing, trial courts must, on a case-by-case basis, carefully consider the record, the motion, counsels' arguments and/or offers of proof, and the law. Where the record establishes no factual scenario or legal theory on which the defendant may prevail, and/or where the defendant holds only hope but articulates no factually-based good faith belief that any impropriety will be exposed through an evidentiary hearing, the evidentiary hearing is not required. *Id.* at 533–35 (emphasis in original).

¶ 50. Velez alleged that the police department violated his due process rights by intentionally waiting until he had reached his eighteenth birthday before seriously attempting to arrest and charge him. To support his allegation, Velez included an affidavit detailing his trial counsel's attempts to obtain information about the efforts of the police department to apprehend him.

¶ 51. The affidavit described how Velez's attorney obtained information from a detective in the Milwaukee County Sheriff's Department and an officer in the Milwaukee Police Department. Based on those discussions, the attorney learned that the police had possibly failed to enter the warrant for Velez's arrest into various databases to aid in his apprehension. Additionally, the affidavit described how the police department either rebuffed or ignored his attorney's subsequent attempts for clarification on this matter. Finally, the affidavit described how his attorney's perusal of his juvenile records discovered documents implying that a juvenile warrant had never been issued or entered into the computer system.

¶ 52. Standing alone, these assertions would not have definitively demonstrated that the police department deliberately delayed its efforts to apprehend Velez until he became an adult. That is to say, the *Nelson* test would not be satisfied by this affidavit. However, Velez did more than assert conclusory allegations. Rather, he articulated a specific factual basis that supported his legal theory.

¶ 53. Velez's affidavit documented both suspicious police activity prior to his arrest and an apparent attempt by the police department to frustrate his attempts at uncovering that suspicious activity. In light of this "factually-based good faith belief" that something improper had occurred, I cannot conclude that Velez sought a hearing "based on nothing but hope or pure speculation." *Garner*, 207 Wis. 2d at 534–35. The circuit court erred in not granting Velez an evidentiary hearing.

¶ 54. If my disagreement with the majority opinion was merely a difference of whether the affidavit in this case was sufficient, I would not write separately.

24

But the opinion of the majority sets the contours for future cases and defines how the test that it adopts is to be applied. In concluding that the factual allegations are insufficient to warrant an evidentiary hearing the majority places an almost insurmountable burden on the defendant in this pretrial motion.

¶ 55. The majority acknowledges the "inherent difficulties a defendant may have in developing the facts necessary to support a pretrial motion" (majority op. at 13), yet affords little recourse. This is especially troublesome where, as here, the evidence necessary to demonstrate manipulation of the system in order to avoid juvenile court jurisdiction will most likely be exclusively in the control of the State. There will be few "smoking guns" alleged as a factual basis for an evidentiary hearing. Instead, the defendant will usually be left with alleging specific facts which constitute circumstantial evidence and arguing the reasonable inferences from that evidence.

¶ 56. Nevertheless, any error on the part of the circuit court does not warrant a new trial in this case. At the time Velez sought the evidentiary hearing, the actions of the police department reasonably permitted the inference that it had deliberately attempted to delay Velez's arrest until his eighteenth birthday. However, documents produced by the police department a month after the court erroneously denied Velez's motion for an evidentiary hearing make clear that the police did not engage in any misconduct. Specifically, the police department produced a report, complete with copies of the actual documents in question, that detailed the thorough and proper procedures it followed in attempting to apprehend Velez while still a juvenile. These documents resolved the very issue

that Velez argues needed to be resolved by an evidentiary hearing.

¶ 57. While I am concerned with the police department's delay in offering an adequate explanation, the fact remains that this issue is now conclusively answered. Accordingly, I concur in the mandate of the court affirming the court of appeals.

¶ 58. I am authorized to state that Chief Justice Shirley S. Abrahamson joins this concurring opinion.